## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **JOHN PRIEST** | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 2:19-cv-4** |
| | § | |
| **LOGAN GRAZIER;** | § | |
| **MICHAEL FENWICK; and** | § | |
| **CITY OF AMARILLO,** | § | |
| *Defendants* | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, JOHN PRIEST, Plaintiff, complaining of LOGAN GRAZIER, MICHAEL FENWICK, and CITY OF AMARILLO and for cause of action will respectfully show unto the Court as follows:

### I. PARTIES

1. Plaintiff John Priest is a resident of Potter County.

2. Defendant Logan Grazier, is an individual residing in Amarillo, Potter County, Texas and is a police officer with the City of Amarillo Police Department and may be served at his place of employment at the Amarillo Police Department located at 200 SE 3rd Ave, Amarillo, TX 79101 or wherever he may be found.

3. Defendant Michael Fenwick, is an individual residing in Amarillo, Potter County, Texas and is a police officer with the City of Amarillo Police Department and may be served at his place of employment at the Amarillo Police Department located at 200 SE 3rd Ave, Amarillo, TX 79101 or wherever he may be found.

4. Defendant City of Amarillo is a political subdivision of the State of Texas and may be served through the Amarillo City Attorney, Mick McKamie, located at 601 S. Buchanan, City Hall, Room 303, Amarillo, Texas 79101 or wherever he may be found.

## II. JURISDICTION AND VENUE

5. The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §1391 because the Defendants are domiciled and/or reside in the Northern District of Texas, and all or a substantial part of the cause of action accrued in the Northern District.

## III. FACTS AND ALLEGATIONS

6. On January 9, 2017, John Priest in the driver seat of his vehicle and stopped in the middle of the road, which was located at NW 3rd Street and Hughes in the city of Amarillo, Texas.

7. Mr. Priest was experiencing a diabetic crisis and was in an obvious state of distress.

8. Defendant Grazier stopped his patrol vehicle behind Mr. Priest's vehicle, approached the driver's side of Mr. Priest's vehicle, and attempted to make contact with Mr. Priest.

9. Defendant Grazier's and Defendant Fenwick's entire contact with Mr. Priest was captured and recorded on Defendant Grazier's dash camera[1].

10. Mr. Priest was suffering confusion, panic and fear, which are characteristic of hypoglycemia, because he could not further communicate his medical needs.

---

[1] Defendant Grazier's dash camera video is being mailed to the Court to be attached to this Complaint as Exhibit A.

11.      EMS protocols indicate that hypoglycemia is a serious medical emergency that must be treated immediately.

12.      Hypoglycemia, if not timely treated, can lead to brain damage, coma and death.

13.      Defendant Fenwick arrived on scene and approached Mr. Priest's car.

14.      Defendants Grazier and Fenwick continued attempting to get Mr. Priest to open the door; however, due to Mr. Priest's inability to articulate his medical emergency he was unable to communicate with the officers.

15.      Defendant Grazier used his department issued ASP baton and shattered the back driver's side window spilling glass shards onto the ground below.

16.      This caused Mr. Priest's anxiety to increase to an even higher level as he was still unable to communicate with officers and they were now breaking into his vehicle.

17.      Throughout the encounter, Mr. Priest's hands can be seen above his head.

18.      Defendants Grazier and Fenwick then aggressively pulled Mr. Priest out of his vehicle by grabbing the back of his neck and forcing his body onto the pavement that was covered with the shards of glass from his broken window.

19.      Both Defendants Grazier and Fenwick, who are notably larger in size than Mr. Priest, then proceeded to get on top of Mr. Priest and used their combined weight to force him into the pavement and shards of glass.

20.      Defendant Fenwick forced his right knee onto the back of Mr. Priest's head. There were multiple times in the video where Defendant Fenwick picked up his left knee allowing the right knee to bear all of his weight on the back of Mr. Priest's neck and head.

21.      It should be noted that Mr. Priest's head was between the weight of Defendant Fenwick and the glass covered pavement.

22. Defendant Grazier also had his body weight on top of Mr. Priest.

23. Both Defendants Grazier and Fenwick struck Mr. Priest multiple times as he can be heard moaning and shrieking in fear, pain, and distress.

24. Defendant Fenwick can be seen striking Mr. Priest with his fist repeatedly while his knee is forced into the back of Mr. Priest's head.

25. Defendants Grazier and Fenwick finally decide to call for an ambulance after handcuffing Mr. Priest.

26. After Mr. Priest was handcuffed behind his back and an ambulance was finally called, Defendant Grazier can be seen rolling Mr. Priest over and delivering a knee strike to Mr. Priest's lower back, which rendered him limp on the glass covered pavement.

27. Mr. Priest was bleeding profusely from his face, which caused Defendant Fenwick to get a medical kit in an attempt to clean the blood from Mr. Priest's face before the ambulance arrived.

28. Pools of blood can be seen on the glass covered pavement where Mr. Priest's face was slammed and forced to remain under the weight of Defendant's Grazier and Fenwick.

29. Throughout the dash cam recording, you can hear Mr. Priest shrieking and moaning in obvious and extreme distress and terror.

30. At no time did Mr. Priest threaten either Defendant Grazier or Defendant Fenwick, nor was Mr. Priest capable of making a threat.

31. Mr. Priest suffered pain from multiple body strikes as well as numerous lacerations to his head and face, which required stitches and left permanent scarring and disfigurement.

32. Mr. Priest has been diagnosed with Post Traumatic Stress Disorder as a result of Defendants egregious conduct.

33. It is apparent and obvious that neither Defendant Grazier nor Defendant Fenwick had received proper training, if any training at all, on how to appropriately administer aid to someone experiencing a medical emergency, specifically hypoglycemia.

34. Normal blood sugar level before a meal is between 90 – 160 mg/dL.

35. Mr. Priest had a blood sugar level of 27 mg/dL 13 minutes after Defendant Grazier called for the ambulance.

36. Defendants Grazier and Fenwick, due to a lack of proper training, erroneously assumed that Mr. Priest was under the influence of narcotics, and, as such, treated him accordingly.

37. At no time did Defendants Grazier or Fenwick attempt to take care of Mr. Priest like someone experiencing a medical emergency.

38. In addition to, but separate from the lack of training issue, the degree of physical force Defendants Grazier and Fenwick used on Mr. Priest was objectively unreasonable under the circumstances as Mr. Priest was experiencing a diabetic crisis and at no time did he pose a threat to Defendant Grazier, Defendant Fenwick, or any other person at the time the force was used.

39. Any claim that that Mr. Priest was resisting arrest or detention is false and made only for the purpose subsequent to this incident to attempt to justify the Defendants egregious and unlawful behavior.

40. The amount of force used on Mr. Priest violated his rights against unreasonable seizures under the Fourth Amendment of the United States Constitution.

41. The Defendants were at all times acting under the color of law.

## IV. CAUSES OF ACTION

### Count One

### Excessive Force – Defendant Fenwick
### (42 U.S.C § 1983)

42. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

43. Acting under the color of law, Defendant Fenwick deprived Plaintiff of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force. By his use of force as described above, Defendant Fenwick has violated 42 U.S.C. § 1983 and the constitutional provisions cited therein.

44. The amount of force used by Defendant Fenwick against the Plaintiff as described above, specifically but not limited to, when he struck Plaintiff with fists, knees, and pushed Plaintiff's face into the ground and broken glass while applying pressure to the back of his head and neck, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

45. As a result of the force used against him, Plaintiff has suffered physical injury, pain and mental anguish for which he sues herein.

## Count Two

### Excessive Force – Defendant Grazier
### (42 U.S.C § 1983)

46. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

47. Acting under the color of law, Defendant Grazier deprived Plaintiff of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force. By his use of force as described above, Defendant Grazier has violated 42 U.S.C. § 1983 and the constitutional provisions cited therein.

48. The amount of force used by Defendant Grazier against the Plaintiff as described above, specifically but not limited to, when he threw Plaintiff to the ground, struck him with a knee to his lower back, and held him down in broken glass, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

49. As a result of the force used against him, Plaintiff has suffered physical injury, pain and mental anguish for which he sues herein.

## Count Three

### Causes of action against Defendant City of Amarillo, Texas under
### _Monell v. New York City Department of Social Services_
### (42 U.S.C § 1983)

50. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

51. The City of Amarillo lacks training that ultimately causes officers to not only fail to differentiate between medical emergencies and symptoms of narcotics use, but to inevitably show deliberate indifference to the medical needs of those taken into custody like Plaintiff in this case. The City of Amarillo tolerates this inadequate training and supervision system that allows Amarillo police officers to escape investigation and discipline for their deliberate indifference to necessary medical care of those that have been detained by reason of the officers assuming ingestion of illegal narcotics instead of medical emergency.

52. The constitutional violations in this case were the direct result of the inadequate training within the department for officers as first responders to assess medical emergencies and to attend to the medical needs of those taken into custody like Plaintiff in this case.

53. Under relevant case law, the acts of the Amarillo Police Department and its officers may be imputed to the City of Amarillo.

54. But for this failure to train, Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution would not have been violated.

55. As a direct result of the city of Amarillo's failure to adequately train, Amarillo police officer's show an inability (or a conscious decision) not to take into account medical emergencies when dealing with members of the community. These situations lead directly to deliberate indifference to medical needs, and, as a result, Plaintiff has suffered physical injuries, mental/emotional injuries, and economic damages. He was deprived of his constitutional rights, all to his damage.

56. Based on the above, the City of Amarillo also bears responsibility for this incident.

57. Defendant City of Amarillo was aware that officers would be likely to encounter the same or similar situations as this and that the subjects would be placed in danger if officers were unable to differentiate between medical emergencies and criminal activity, which leads to them being deliberately indifferent to the subject's medical needs. Despite that awareness, the City took no steps to adequately educate or train officers on how to handle situations such as this even though the consequences of such practice — serious bodily injury resulting from failure to attend to a serious medical need — was known or obvious. As a result, the Amarillo Police officers involved in this case failed to attend to the medical needs of Plaintiff, and instead resorted to excessive force, causing him further injury.

58. The City of Amarillo does not train or implement policy that police as first responders should react with restraint to persons with disabilities. Additionally, the City of Amarillo was deliberately indifferent and reckless in allowing the indiscriminate use and over-use of force and failure to adequately train officers in use of force, as first responders dealing with medical emergencies.

59. The City of Amarillo knew or should have known at the time of the occurrence that this was a situation which its officers would have to deal with on a regular basis. Similarly, City of Amarillo knew or should have known that this situation had the real potential for injury and/or serious harm to a citizen. Despite that, City of Amarillo retained its policy and at the same time provided no training or inadequate training to its officers on how to deal with this situation.

60. The failure to ensure that written policies were adequately implemented and the toleration of failing to determine and attend to the medical emergencies of those taken into custody who have a serious medical need, as well as the lack of adequate

training by the City of Amarillo, constitutes deliberate indifference to Plaintiff's constitutional rights.

61. The constitutionally inadequate training, by City of Amarillo constituted deliberate indifference towards Plaintiff's constitutional rights and the safety of those detained by and who simply come into contact with the Amarillo Police Department. The subsequent violation of those constitutionally protected rights (including the Fourth and Fourteenth Amendments) was a direct and foreseeable cause of his injury. As a result, Plaintiff is entitled to recover actual damages as a matter of law. Plaintiff sues Amarillo for actual and exemplary damages. The constitutionally inadequate training was the moving force behind the constitutional violations that resulted in the mental/emotional injuries of Plaintiff.

## Count Four

**Causes of action against Defendant City of Amarillo, Texas under *Violation of Americans with Disabilities Act and §504 of Rehabilitation Act***

62. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

63. The Defendant, City of Amarillo is a local governmental entity which engages in offering and providing medical services to members of the general public who are in the custody of the City and is a recipient of federal funds.

64. Section 504 of the Rehabilitation Act ("Section 504") requires recipients of federal funds to reasonably accommodate persons with disabilities in their program activities and services.

65. Section 504 requires such recipients to modify such facilities, services, and programs as necessary to accomplish this purpose.

66. Defendant City of Amarillo is a recipient of federal funds and subject to Section 504.

67. The Americans with Disabilities Act ("ADA") defines discrimination as the failure to take necessary steps to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of services for the disabled. Such services include, inter alia, provisions necessary to protect a diabetic from harm due to hypoglycemia.

68. At all times relevant hereto, Plaintiff was suffering from Diabetes.

69. Mr. Priest was a qualified individual with a disability under Section 504 and the ADA.

70. Defendant City of Amarillo is an entity which must comply with Section 504 and the ADA.

71. Defendants Fenwick and Grazier wer employed by the City of Amarillo and were acting within the course and scope of employment and under color of law.

72. At all times relevant hereto, Mr. Priest was exhibiting erratic behaviors that were consistent with suffering a diabetic crisis.

73. As a punishment for Mr. Priest's erratic, uncooperative and/or irrational behaviors, Defendants Grazier and Fenwick provided pain techniques in place of appropriate care.

74. The harm to Mr. Priest was preventable by timely treatment by first responders who were called, as well as Defendants Fenwick and Grazier.

75. Instead, Defendants Fenwick and Grazier declined to exhaust any efforts to test and treat Mr. Priest while they administered punishment to Mr. Priest for manifesting the symptoms of his disability.

76. Instead of accommodating Mr. Priest's needs, City of Amarillo denied Mr. Priest adequate medical services and programs available to others that would have prevented his injury.

77. The failure to accommodate Mr. Priest's disabilities was intentional and/or deliberately indifferent to Mr. Priest's rights under Section 504 and Title II of the ADA and was the proximate cause of his injury.

## V. Qualified Immunity

78. It is anticipated Defendants will raise, or attempt to raise, a defense of qualified immunity. In this regard, Plaintiff pleads that it was well-established law, well before January 12, 2017, that every citizen of the United States has a clearly defined constitutional right to be free from an unlawful seizure by law enforcement officials in accordance with the Fourth Amendment to the United States Constitution, as applied to the several States through the Fourteenth Amendment, and to be free from unlawful excessive force. No reasonable law enforcement official would have acted as Defendants did under these circumstances, by striking Plaintiff with the door of a moving vehicle when Plaintiff was not posing a threat.

79. The use of force was grossly excessive, unreasonable, and unwarranted. The Defendants are not, therefore, entitled to the protection of qualified immunity for their actions.

## VI. Exemplary Damages

80. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

81. When viewed objectively from the standpoint of Defendants, at the time of the occurrence, said Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

82. As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by the Defendants, Plaintiff is entitled to recover exemplary damages in an amount within the jurisdictional limits of this Court.

## VII. Damages

83. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

84. Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendants' use of excessive and unreasonable force used against Plaintiff. As a result, Plaintiff is entitled to recover all actual damages allowed by law. Plaintiff contends Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages.

85. As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

    a. Significant physical injuries;

    b. Physical pain and suffering in the past and future;

    c. Physical Impairment in the past and future;

    d. Emotional distress, torment, and mental anguish in the past and future;

    e. Medical Expenses, and

    f Permanent disfigurement.

86. Pursuant to 42 U.S.C. § 1983 and 1988, and Texas Civil Practice & Remedies Code section 41.003(a), Plaintiff seeks to recover, and hereby requests the award of exemplary damages, reasonable attorney's fees, and costs of court.

## VIII. Attorneys' Fees

87. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## IX. Jury Request

88. Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

/s/ Scott H. Palmer
SCOTT H. PALMER
State Bar No. 00797196
JAMES P. ROBERTS
State Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF